**UNITED STATES of America,**

v.

**Nat SCHLESINGER, also known as "Naftule Schlesinger" and "Zvi Pollack," Herman Niederman, and Goodmark Industries, Inc., Defendants.**

**Cr. No. 02–485(ADS)(ARL).**

United States District Court, E.D. New York.

Oct. 7, 2005.

---

Roslynn R. Mauskopf, United States Attorney Eastern District of New York by Lawrence Philip Ferazani, Cynthia M. Monaco, Richard Lunger, Assistant U.S. Attorneys, Central Islip, NY, for U.S.

Shaw Licitra Gulotta Esernio & Schwartz, P.C. by Douglas T. Burns, Esq., Garden City, NY, Randy Scott Zelin, P.C. by Randy Scott Zelin, Esq., Westbury, NY, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, LLP by Herald Price Fahringer, Esq., Jeremy L. Gutman, Esq., New York City, Michael L. Soshnick, Esq., Mineola, NY, Co-counsel for the defendants Nat Schlesinger and Goodmark Industries, Inc.

### *MEMORANDUM OF DECISION AND ORDER*

SPATT, District Judge.

In this case the government seeks, pursuant to Federal Rule of Criminal Procedure 32.2(b)(2), the entry of a preliminary order of forfeiture in the total sum of $21,195,665.74 against defendants Nat Schlesinger ("Schlesinger") and Goodmark

Industries, Inc. (collectively the "defendants"). The government claims that these assets are forfeitable as the proceeds of mail fraud, wire fraud, and money laundering. The defendants, who waived their right to have this matter determined by a jury, argue, among other things, that: (1) the building that housed the defendants' business is not subject to forfeiture because it did not "facilitate" the money laundering; (2) the proceeds are not "criminally derived property" within the meaning of the money laundering statute; and (3) title 28 U.S.C. § 2461(c) does not permit criminal forfeiture based on mail and wire fraud.

## I.  BACKGROUND

With his brother Jack, Schlesinger owned and maintained a clothing manufacturing business in a building located at an address known at various times as: (1) 48–76 Wallabout Street, Brooklyn, New York; (2) 50 Wallabout Street, Brooklyn, New York; (3) 750 Kent Avenue, Brooklyn, New York; and (4) 1 Classon Avenue, Brooklyn, New York ("the Wallabout Street Property"). The clothing manufacturing business was known at various times as Pous Apparel, Inc., Private Brands of Delaware, Inc., and the defendant Goodmark Industries, Inc. On May 19, 2005, following a four week jury trial, the defendants were convicted of, among other counts, conspiracy to commit mail and wire fraud, 18 U.S.C. § 371, substantive mail and wire fraud, *id.* § 1341 and 1343, conspiracy to commit money laundering and substantive money laundering. *Id.* § 1956(h) and 1957.

At the trial the government proved two fraudulent schemes. One scheme involved defrauding insurance companies by submitting fraudulent claims for losses sustained as a result of a series of fires that occurred at the Premises from 1987 to 1999. The second scheme involved using Pous Apparel, Private Brands, and Goodmark Industries as a vehicle to defraud various creditors by masking the true ownership of the companies. This scheme involved the use of nominees and shell corporations to carry out what was, in effect, two self organized bankruptcies.

The indictment includes two criminal forfeiture allegations. The first criminal forfeiture allegation relates to counts charging a money laundering conspiracy and substantive money laundering related to proceeds from the creditor fraud and insurance fraud schemes. For these counts, the government seeks forfeiture, pursuant to 18 U.S.C. § 982, of all properties, real and personal, involved in these offenses or traceable to such property. In this allegation, the government seeks forfeiture of the sum of $11,480,629.41 as well as a specific asset: a total of $5,131,881.92 traceable to the sale of the "the Wallabout Street Property".

The second forfeiture allegation relates to the counts that involve the mail and wire fraud conspiracy, and substantive mail fraud related to the scheme to defraud insurance companies, and the mail fraud conspiracy and substantive mail fraud related to the scheme to defraud creditors. For these counts, the government seeks forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), of all properties, real and personal, which constituted or were derived from proceeds traceable to an offense constituting a "specified unlawful activity" under 18 U.S.C. § 1956(c)(7) in the amount of $4,583,154.41. Under that statute, mail fraud and wire fraud, or a conspiracy to commit such offense is considered a "specified unlawful activity."

## II.  DISCUSSION

### A.  Criminal Forfeiture Procedure

The procedures governing criminal forfeiture are set forth in Federal Rule of

Criminal Procedure 32.2(b)(1), which provides:

As soon as practicable after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay. The court's determination may be based on evidence already in the record, including any written plea agreement or, if the forfeiture is contested, on evidence or information presented by the parties at a hearing after the verdict or finding of guilt.

Fed R.Crim. P. 32.2(b)(1).

██ It is well-settled in the Second Circuit that once the defendant is convicted of an offense on proof beyond a reasonable doubt, the government is only required to establish the forfeitability of the property subject to criminal forfeiture as a result of that offense by a preponderance of the evidence. *United States v. Fruchter,* 411 F.3d 377, 383 (2d Cir.2005) ("Booker and Blakely [do not] require proof beyond a reasonable doubt in open-ended punishment schemes, such as [criminal] forfeiture."); *see also Libretti v. United States,* 516 U.S. 29, 49, 116 S.Ct. 356, 367–68, 133 L.Ed.2d 271, 289 (1995).

██ Criminal forfeiture is most commonly used by the government to seize the "proceeds of" and "property facilitating" drug trafficking offenses, 21 U.S.C. § 853, and the "proceeds of" and "property in-volved in" money laundering. 18 U.S.C. § 982. Under Rule 32.2(b)(1), the court is assigned the task of determining the amount of money the defendant will be ordered to pay or whether there is a sufficient nexus between the property and the offense of conviction. The court makes this determination based upon the evidence in the record of the criminal trial or evidence presented at a hearing after the verdict. *See Fruchter,* 411 F.3d at 384.

**B. Criminal Forfeiture for Money Laundering and Money Laundering Conspiracy**

The government seeks forfeiture in the amount of $11,480,629.41 under the provisions of 18 U.S.C. § 982 based upon money laundering and money laundering conspiracy relating to monetary transactions with regard to insurance fraud proceeds and monetary transactions derived from the Goodmark Industries creditor fraud. Specifically, the amount sought includes: (1) $11,480,629.41 representing the total value of the property allegedly involved in the money laundering; and (2) $5,131,881.92 representing the net proceeds traceable to the Wallabout Street Property.

Under 18 U.S.C. § 982, "any property, real or personal, involved in such offense, or any property traceable to such property" is subject to criminal forfeiture. The term "involved in" has consistently been interpreted broadly by courts to include any property involved in, used to commit, or used to facilitate the money laundering offense. *See United States v. Huber,* 404 F.3d 1047, 1056 (8th Cir.2005); *United States v. Puche,* 350 F.3d 1137 (11th Cir. 2003); *United States v. McGauley,* 279 F.3d 62. 76 n. 14 (1st Cir.2002); *United States v. Baker,* 227 F.3d 955 (7th Cir. 2000); *United States v. Wyly,* 193 F.3d 289 (5th Cir.1999); *United States v. Bornfield,* 145 F.3d 1123 (10th Cir.1998); *United*

*States v. Hawkey,* 148 F.3d 920, 927–28 (8th Cir.1998); *United States v. Tencer,* 107 F.3d 1120, 1134 (5th Cir.1997); *United States v. 1501 West Boulevard,* 814 F.Supp. 468, 479 n. 37 (W.D.N.C.1993), aff'd, *United States v. Marsh,* 105 F.3d 927 (4th Cir.1997); *United States v. Eleven Vehicles,* 836 F.Supp. 1147, 1153 (E.D.Pa. 1993); *United States v. Krasner,* 841 F.Supp. 649 (M.D.Pa.1993); *United States v. Certain Accounts,* 795 F.Supp. 391, 396 (S.D.Fla.1992); *United States v. All of the Inventories of the Bus. Known as Khalife Bros. Jewelry,* 806 F.Supp. 648, 650 (E.D.Mich.1992); *United States v. All Monies in Account No. 90–3617–3,* 754 F.Supp. 1467, 1473 (D.Haw.1991). This interpretation is supported by the legislative history. *See* 134 Cong. Rec. S17365 (daily ed. Nov. 10, 1988) (statement of Sen. Biden).

■ The government claims that the Wallabout Street Property and all proceeds traceable to its sale are forfeitable because the property facilitated the defendants' money laundering. "Facilitation occurs when the property makes the prohibited conduct less difficult or more or less free from obstruction or hindrance." *United States v. Wyly,* 193 F.3d 289, 302 (5th Cir.1999) (quoting *Tencer,* 107 F.3d at 1134).

In *Wyly,* the defendant was a public official who accepted a kickback in return for steering the contract for the construction of a privately-owned prison to a particular contractor. After the defendant was convicted of money laundering, the court held that the government was entitled to forfeiture of the new jail itself as property involved in the money laundering offense. The Fifth Circuit reasoned that "the prison[ ] was the source of the criminal proceeds and was indispensable to the money laundering conspiracy. Without the prison, there could have been no bribery, mail fraud, or money laundering." *Id.* at 302.

The Second Circuit appears to have embraced the "facilitation" approach. In *United States v. G.P.S. Automotive Corp.,* 66 F.3d 483, 486 (2d Cir.1995), the government sought civil forfeiture for money laundering under § 981, the analogous civil provision to the criminal statute (§ 982) relevant in this case. The Second Circuit upheld the forfeiture of the defendants' automotive salvage and repair shop as well as the property in which it was located. *Id.* at 487. Specifically, the court found that there were several unlawful transactions at the business, such as removing or altering vehicle identification numbers, that were directly related to the automotive-fraud and the money laundering. *Id.* at 487.

The Defendants contend that property is only subject to forfeiture under the "facilitation theory" if that property actually facilitates the money laundering. The Defendants argue that the money laundering offense is distinguishable from the unlawful activity that forms the basis of the underlying offense. That distinction is not applicable in this case.

■ Here the evidence established that the Wallabout Street Property and the clothing manufacturing business that it housed were integral to the fraud perpetrated by the Defendants and facilitated the money laundering. The factory was the focal point of both the insurance fraud and the creditor fraud and covered a time period from 1987 to 2003. The defendants used the clothing manufacturing factory to steal money from insurance companies by submitting fraudulent insurance claims for damages due to fires that occurred at the premises. In addition, the Defendants used the factory to perpetrate creditor fraud by having shell companies foreclose on the collateral located in the factory,

such as sewing machines and other equipment used to run the business.

The proceeds of both fraudulent schemes were routinely laundered through the business operating accounts of Goodmark Industries, and its predecessors Private Brands and Pous Apparel. For example, the proceeds of the fraud were used to pay Goodmark's loans and make the monthly tax payments on the Wallabout Street Property. Therefore, the Court finds that the property was sufficiently "involved in" the money laundering offense to subject it to criminal forfeiture.

■ The Defendants also contend that they should not have to forfeit the Wallabout Street Property because they allege that Schlesinger did not own the property at the time of the offense. However, the extent of the Defendant's ownership or interest in the property is not at issue in determining whether the court should enter a preliminary order of forfeiture. The extent of the defendants' interest in the property and any other party's interest will be decided, if necessary, in an ancillary hearing. *See* Fed.R.Crim.P. 32.2(c); *see, e.g., Pacheco v. Serendensky,* 393 F.3d 348, 351 (2d Cir.2004).

■ In addition, the Defendants contend that the proceeds from the sale of the property were not "involved in" the money laundering. However, the money laundering statute expressly covers proceeds that are "traceable" to the property "involved in" the offense. *See* 18 U.S.C. § 982(a)(1). The government submitted evidence concerning the sale of the property establishing that the Wallabout Street Property was sold for the total sum of $6,925,000.00. The government also traced the net proceeds from the sale in the total amount of $5,107,152.95 as follows: (1) the sum of $3,848,164.00 in an attorney's escrow account at Chase Manhattan Bank; (2) the sum of $1,251,436.00 used to make mort-

gage and other payments on a residential property owned by Schlesinger. Prior to trial, Schlesinger agreed to deposit $1,251,436.00 with the Clerk of the Court. As of May 2005, the total value of the proceeds of the sale of the property, including accrued interest, was the sum of $5,131,881.92.

In addition, the government also seeks a money judgment in the total amount of $11,480,629.41 representing the total value of all of the property involved in the money laundering as follows: (1) $4,510,629.41 in laundered insurance proceeds; (2) $45,000.00 in laundered creditor fraud proceeds; and (3) $6,925,000.00 from the gross proceeds derived from the sale of the Wallabout Street Property.

Accordingly, based on the evidence presented at the trial the Court finds that the government has established that the sum of $11,480,629.41, representing the total value of the property involved in the money laundering and the sum of $5,131,881.92, representing the net proceeds traceable to the Wallabout street property is subject to forfeiture.

## C. Criminal Forfeiture for Mail and Wire Fraud

Generally, criminal forfeiture is authorized for the offenses of mail and wire fraud only when "special circumstances" are present, such as where the fraud affected a financial institution. 18 U.S.C. § 982(a). Here, the government seeks criminal forfeiture for mail and wire fraud under the civil forfeiture provision, § 981, which does not require "special circumstances." In the indictment, the government cited 28 U.S.C. § 2461(c) in support of its theory for criminal forfeiture. Whether § 2461(c) authorizes criminal forfeiture for mail and wire fraud appears to be unsettled in the Second Circuit.

In resolving this issue, the Court will look to the sound principles of statutory interpretation and case law. *See Spector v. Norwegian Cruise Line Ltd.*, —— U.S. ——, ——, 125 S.Ct. 2169, 2177, 162 L.Ed.2d 97 (2005). "In interpreting [§ ] 2461(c), we look first to its language." *United States v. Razmilovic*, 419 F.3d 134, 136 (2d Cir.2005). As with any other issue of statutory interpretation, the Court will examine the language of the statute "in light of context, structure, and related statutory provisions." *Exxon Mobil Corp. v. Allapattah Servs.*, —— U.S. ——, ——, 125 S.Ct. 2611, 2620, 162 L.Ed.2d 502 (2005). "However, where statutory language is ambiguous a court may resort to the canons of statutory interpretation and to the statute's legislative history to resolve the ambiguity." *United States v. Awadallah*, 349 F.3d 42, 51 (2d Cir.2003) (quoting *Canada Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG*, 335 F.3d 52, 57 (2d Cir.2003)).

Title 28 U.S.C. § 2461(c) authorizes criminal forfeiture for any offense for which Congress has authorized civil forfeiture. The statute states:

> If a forfeiture of property is authorized in connection with a violation of an Act of Congress, and any person is charged in an indictment or information with such violation but no specific statutory provision is made for criminal forfeiture upon conviction, the Government may include the forfeiture in the indictment or information in accordance with the Federal Rules of Criminal Procedure, and upon conviction, the court shall order the forfeiture of the property in accordance with the procedures set forth in section 413 of the Controlled Substances Act [21 U.S.C. § 853], other than subsection (d) of that section.

28 U.S.C. § 2461(c).

Under 18 U.S.C. § 981(a)(1)(C), any property that constitutes or is derived from proceeds traceable to a violation of a specified unlawful activity, as defined in 18 U.S.C. § 1956(e)(7), or a conspiracy to commit such offense, is subject to criminal forfeiture. Among the specified unlawful activities that criminal forfeiture may be predicated are mail and wire fraud under §§ 1341 and 1343. *See id.* § 1956(c)(7)(A) & 1961(1)(B). The government argues that these sections authorize criminal forfeiture for mail and wire fraud without regard to the specific criminal provision in § 982 that authorizes criminal forfeiture for mail and wire fraud, but only if "special circumstances" apply. That section limits criminal forfeiture to cases involving "special circumstances," such as where the fraud affected a financial institution, § 982(a)(2)(A); involved the sale of assets of the Resolution Trust Corporation and other federal entities, § 982(a)(3)(E) and (F); or involved telemarketing. § 982(a)(8).

The portion of § 2461(c) relevant in this inquiry is the term "but no specific statutory provision is made for criminal forfeiture upon conviction." *Id.* The Defendants contend that this language restricts the use of § 2461(c) for criminal forfeiture to instances where "no specific statutory provision is made for criminal forfeiture upon conviction." *Id.* The Defendants argue that 18 U.S.C. § 982(a) is a "specific statutory provision" for criminal forfeiture with respect to mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of § 1343 that limits criminal forfeiture to cases involving "special circumstances." § 982(a)(8). In this case, none of the enumerated "special circumstances" are alleged to be present. Therefore, the Defendants argue that this "specific statutory" provisions prohibits the use of § 2461(c) as a basis for criminal forfeiture for mail and wire fraud.

The Defendants' reading of § 2461(c)—that it does not apply when another statute already provides for the criminal forfeiture of the property involved in a criminal offense—is at first blush a plausible reading of the statute. Indeed, several district courts have held that § 2461(c) does not expand the scope of preexisting criminal forfeiture provisions whenever a related civil forfeiture provision is broader. *See United States v. Croce,* 345 F.Supp.2d 492, 496 (E.D.Pa.2004); *United States v. Grass,* No. 02–146, 2002 U.S. Dist. LEXIS 26045, at *15–16 (M.D.Pa.2002); *United States v. Thompson,* No 02–CR–116, 2002 WL 31667859, 2002 U.S. LEXIS 22732 (N.D.N.Y.2002).

While this restrictive reading of the statute appears plausible, it is not the only permissible construction of the statute. Reading the statute the way the Defendants propose adds qualifying language that is simply not in the statute. The Defendants interpret the section to mean that the government can *only* include the charges *if* there is no existing criminal forfeiture provision. This interpretation wrongfully replaces the word "but" with "only if."

The word "but" is used in the statute as a conjunction. The definition of "but" is "except for the fact" or "unless." *See Merriam–Webster's Third New International Dictionary Unabridged* (2002). "But" is not synonymous with "only if." Using the definition "unless" and rearranging the phrasing of the statute, it reads: "the Government may include the forfeiture in the indictment ... if forfeiture of property is authorized ... [unless a] specific statutory provision is made for criminal forfeiture upon conviction...." 28 U.S.C. § 2461(c). Constructing the statute in this manner makes § 2461(c) a broad "gap filler" that applies whenever civil forfeiture is permitted. In sum, when there is no provision for criminal forfeiture, the government may use a civil forfeiture provision if it includes such allegation in the indictment. In instances where there is a specific criminal forfeiture provision—that specific provision and the procedures it sets forth—and not the civil forfeiture provision will apply.

In addition, the Second Circuit in *Razmilovic* recently analyzed this same statute in concluding that it does not provide for pretrial restraint. 419 F.3d at 137. The court noted that the statute provides for the "inclusion of forfeiture allegations in certain criminal indictments 'in accordance with' the Federal Rules of Criminal Procedure, and 'forfeiture ... upon conviction ... in accordance with' the procedures of Section 853...." *Id.* In addition, the statute "allows the government to combine criminal conviction and criminal forfeiture in a consolidated proceeding." *Id.* at 136. Notably, *Razmilovic* involved the same exact theory of forfeiture for mail and wire fraud offenses under § 2461(c) as is sought in this case. *See id.* at 135. However, the Second Circuit did not even discuss the issue of whether § 2461(c) authorized criminal forfeiture for mail and wire fraud. *Id.*

In this case, under the plain terms of § 2461(c), criminal forfeiture for mail and wire fraud is permitted. There is no specific criminal provision for mail and wire fraud, only a criminal provision for mail and wire fraud where "special circumstances" are present. However, § 981 authorizes civil forfeiture for mail and wire fraud without the special circumstances that need to be present under § 982. Therefore, the Court finds that § 2461(c) permits the government to include the civil provision (§ 981) in the indictment, and for the court to enter a preliminary order of criminal forfeiture upon conviction in ac-

cordance with the Federal Rules of Criminal Procedure.

Generally, where a court finds that a statute is plain on its face there is no need to look at legislative history or purpose to discern the meaning of the statute. *See United States v. Gotti*, 155 F.3d 144, 149 (2d Cir.1998). However, where, as here, a statute is arguably subject to two permissible readings it is appropriate and helpful for the court to look to legislative history to discern the correct application of the statute. "The words chosen by Congress 'are not in all instances a reliable indicator of Congress' intent, [and the court] may look to the legislative history of the enactment to determine whether literal application of the statute would pervert its manifest purpose.'" *Sheet Metal Workers' Intern. Ass'n, v. Pelella*, 350 F.3d 73, 82–83 (2d Cir.2003) (quoting *United States v. Perdue Farms*, 680 F.2d 277, 280 (2d Cir.1982)) (citations and quotation marks omitted).

Here, the legislative history makes it clear that Congress intended § 2461(c) to authorize criminal forfeiture for offenses such as mail and wire fraud, as long as there is a corresponding civil forfeiture provision. Section 2461(c) was enacted in the year 2000 as part of the Civil Asset Forfeiture Reform Act ("CAFRA"). The CAFRA was an extensive reform of the federal forfeiture system. The Act primarily addressed areas of civil forfeiture such as (1) the burden of proof, (2) the right to appointed counsel, (3) the innocent owner defense, (4) the return of property and compensation for damage to property, (5) the elimination of a cost bond, and (6) the time to contest forfeiture. These reforms brought the due process protection afforded to civil defendants in line with criminal forfeiture proceedings. Pub.L. No. 106–185, 114 Stat. 202 (2000).

The substantial safeguards that CAFRA introduced were in response to mounting concerns about due process in civil forfeiture proceedings. The House of Representatives' Judiciary Committee noted these concerns as the impetus behind CAFRA when it announced the enactment of the law:

[A] number of years ago, concerns began to be raised about abuses of civil forfeiture laws. Newspaper and television exposes appeared alleging that apparently innocent property owners unfortunate enough to match drug courier "profiles" through such acts as carrying large amounts of cash or by purchasing airline tickets with cash were having their property taken by federal and local law enforcement officers with nothing that could be called due process.

Federal courts began to echo these concerns. The Second Circuit stated that "[w]e continue to be enormously troubled by the government's increasing and virtually unchecked use of the civil forfeiture statutes and the disregard for due process that is buried in those statutes." *United States v. All Assets of Statewide Auto Parts, Inc.*, 971 F.2d 896, 905 (2nd Cir.1992). The Seventh Circuit issued a decision containing a stinging rebuke of the federal government's use of civil forfeiture. In *United States v. $506,231 in U.S. Currency*, 125 F.3d 442, 454 (7th Cir.1997), the court found the need to remind a U.S. Attorney that "the government may not seize money, even half a million dollars, based on its bare assumption that most people do not have huge sums of money lying about, and if they do, they must be involved in narcotics trafficking or some other sinister activity." The court also found the need to say that "[w]e are certainly not the first court to be 'enormously troubled by the government's increasing and virtually unchecked use of

the civil forfeiture statutes and the disregard for due process that is buried in those statutes." And Supreme Court Justice Clarence Thomas has stated that, "[i]mproperly used, forfeiture could become more like a roulette wheel employed to raise revenue from innocent but hapless owners whose property is unforeseeably misused, or a tool wielded to punish those who associate with criminals, than a component of a system of justice." *Bennis v. Michigan*, 516 U.S. 442, 456, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996) (Thomas, J., concurring).

H.R.Rep. No. 106–1048 (2001).

The concern over due process in civil forfeiture and the significant reform that CAFRA introduced shed light on the issue in this case. Nestled among the reforms in CAFRA is a provision entitled "Encouraging Use of Criminal Forfeiture as an Alternative to Civil Forfeiture." This section, codified at § 2461(c), is described in the committee report as follows: "Availability of Criminal Forfeiture and Proceeds Forfeiture. The Act provides that wherever federal law allows for civil forfeiture of property involved in a specific crime, criminal forfeiture will also be available. It also provides that the proceeds of specified money laundering predicate offenses will be subject to civil forfeiture." It appears that in enacting more stringent due process protection in the civil forfeiture realm, Congress inserted § 2461(c) to allow the government to seek forfeiture through an indictment rather than commencing a separate civil action against a criminal defendant for civil forfeiture.

No other result seems reasonable. Section 2461(c) saves the parties the time and expense of litigating both a criminal and civil action, or re-litigating the same issues under the same standards. It also furthers the intent of Congress, that is, to allow for criminal forfeiture whenever civil forfeiture is available. Assuming § 2461(c) did not authorize criminal forfeiture for mail and wire fraud, the government would be required to commence a separate civil action for forfeiture under § 981—which authorizes civil forfeiture for mail and wire fraud—and re-litigate the same facts and issues under the same standards as it would have if § 2461(c) authorized criminal forfeiture. This procedure makes no sense and frustrates the manifest intent of the statute.

As noted by a learned treatise:

[S]ection 981(a)(1)(C) was amended [by CAFRA] to allow civil forfeiture of the "proceeds" of all crimes that are money laundering "predicate" offenses or of a conspiracy to commit such an offense. Another provision of the CAFRA, codified at 28 U.S.C. § 2461(c), allows for criminal forfeiture whenever civil forfeiture is authorized. Previously, civil and criminal proceeds forfeiture was available only for drug or money laundering offenses, with a few exceptions. That forced the government to pursue money laundering charges, with their terrible sentencing guidelines, to obtain forfeiture of most criminal proceeds. This was one of the primary reasons for the overuse and abuse of the money laundering statutes. Thus, an important benefit of the expansion of proceeds forfeiture is the decoupling of proceeds forfeiture from money laundering charges.

David B. Smith, 1 *Prosecution and Defense of Forfeiture Cases* § 5.03 (2005) (footnotes omitted)

■ Accordingly, the Court finds that § 2461(c) authorizes criminal forfeiture under § 981 for mail and wire fraud without having to prove the "special circumstances" listed in § 982(a). Under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property "which constitutes or is derived from proceeds traceable to

..." a violation of mail or wire fraud, or a conspiracy to commit such offense, is subject to criminal forfeiture. *Id.; see also* § 1956(c)(7)(A) & 1961(1)(B) (listing mail and wire fraud as a "specified unlawful activity" under § 981(a)(1)(C)); *see also Pasquantino v. United States,* —— U.S. ——, ——, 125 S.Ct. 1766, 1787, 161 L.Ed.2d 619 (2005) (Ginsburg, J., dissenting) (stating that wire fraud is a predicate offense under 18 U.S.C. § 1961(1)); *United States v. All Funds Distributed To, or o/b/o Weiss,* 345 F.3d 49, 53 (2d Cir.2003).

The term "proceeds" in § 981(a)(1) is defined as:

(A) In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.

(B) In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services. The claimant shall have the burden of proof with respect to the issue of direct costs. The direct costs shall not include any part of the overhead expenses of the entity providing the goods or services, or any part of the income taxes paid by the entity.

18 U.S.C. § 981(a)(2).

■■■ The indictment charged Schlesinger with conspiring to defraud insurance companies by submitting false claims seeking a total of approximately $9,000,000 in insurance benefits to cover losses associated with fires at the Wallabout Street Prop-

erty from 1987 to 1999. At the trial, the government proved that the defendants actually secured $4,510,629.41 from insurance companies as a result of the mail and wire fraud. The government claims that this entire amount is forfeitable as "proceeds" of the unlawful offense.

The Defendants contend that the only "proceeds" that were "involved in" the offenses were the amounts that were actually obtained by fraud, that is, the amount that exceeded the actual value of the property loss for which coverage was sought. In addition, they contend that the Defendants are not required to establish which portion is not the proceeds of the fraudulent misrepresentation. The Court disagrees.

While the government bears the initial burden of proving, by a preponderance of evidence, the amount forfeited, pursuant to § 981(a)(2)(B) the defendant has "the burden of proof with respect to the issue of direct costs ..." with respect to "lawful goods or lawful services that are sold or provided in an illegal manner...." *Id.* Here, although the Defendants argue that a portion of the insurance proceeds were "lawful," they have failed to establish that these proceeds constitute "lawful goods or lawful services" instead of "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture...." *Id.*

Moreover, the Second Circuit has upheld the forfeiture of gross "proceeds" in similar circumstances. In *United States v. Zvi,* 168 F.3d 49, 52 (2d Cir.1999), the defendants faked the robbery of their own jewelry store in order to defraud an insurer. After obtaining the proceeds from the insurance company the defendants used the proceeds of the wire fraud to pay off creditors and consignors. The government sought forfeiture of funds legitimate-

ly obtained through the sale of gold jewelry prior to the commission of the fraud. The Second Circuit permitted the forfeiture, noting "[t]he proceeds from the pre-robbery sale of gold represented the defendants' take from the scheme .... [that was] part of a single scheme to commit wire fraud and that the proceeds from the sale of gold constituted the requisite proceeds from specified unlawful activity under the money laundering statute." *Id.* at 56. The court concluded, "It is immaterial that the defendants kept the gold proceeds and used the insurance proceeds to pay creditors instead of the other way around; at the end of the day, the defendants had their loot as a result of the fraud and had laundered it." *Id.* at 56.

Similarly, in *United States v. 3814 NW Thurman St.*, 164 F.3d 1191, 1194 (9th Cir.1999), the government sought forfeiture for mail and wire fraud after the claimant inflated her actual income on a loan application. The Ninth Circuit found that the entire proceeds of the amount of the loan that was procured was forfeitable, and rejected the claimant's argument that only a portion of the amount of the loan was a result of the fraud. *See id.; see also United States v. Saccoccia*, 58 F.3d 754, 785 (1st Cir.1995) (upholding the district court's rejection of the argument that only profits of a criminal activity are subject to forfeiture).

In this case, there was overwhelming evidence that between 1987 and 2003, the defendants engaged in a mail and wire fraud conspiracy that produced criminal proceeds in the amount of $4,510,629.41. This amount was the result of checks tendered by insurance companies to the defendants for the payment of fraudulently inflated claims for the fires that occurred at the Wallabout Street Property. As such, the government is entitled to forfeit this amount from the defendants.

In addition, the government also established that this same sum of $4,510,629.41 in fraudulent insurance payments was laundered when it was deposited into and transferred through the defendants' business accounts. The Court finds, by a preponderance of the evidence, that the value of these payments are subject to forfeiture in their entirety because, pursuant to § 982(a)(1), they were all "involved in" a money laundering violation.

■ There was also ample evidence that Schlesinger perpetrated frauds upon the creditors of Goodmark. At the trial the government proved that the defendants engaged in a creditor fraud scheme in which Western Industries, Inc., a company controlled by Schlesinger, foreclosed on Goodmark's machinery and equipment, leaving the creditors of Goodmark without any recourse against Goodmark's assets. Schlesinger masked his ownership of Western Industries through a series of nominees and transactions with shell corporations. After foreclosing on the Goodmark assets, Western Industries sold the equipment at auction for the sum of $72,525.00. The Court finds that the government is entitled to this amount as the proceeds of the criminal offense.

■ The Defendants also contend that the application of § 2461 to their mail and wire fraud convictions violates the *ex post facto* clause of the Constitution. Again, the Court disagrees. It is well-established that the *ex post facto* clause does not bar the application of a newly-enacted statute to offenses that began before, but continued after, the enactment of the statute. *United States v. Monaco*, 194 F.3d 381, 386 (2d Cir.1999). The CAFRA became effective on August 23, 2000. The indictment upon which the defendants were convicted lists a conspiracy that continued beyond August 23, 2000. One of the overt acts alleged in the indictment for the con-

spiracy states, "On or about March 16, 2001, in New York, New York, Schlesinger filed a lawsuit against Atlantic Mutual seeking to recover damages caused by the 1998 Fire." Therefore, it appears that the crime occurred after the effective date of the statute and the *ex post facto* clause of the Constitution has no consequence with regard to this claim.

Accordingly, based upon the evidence presented at the trial the Court finds that the government has established that the sum of $4,510,629.41, representing the proceeds derived from the insurance fraud and the sum of $72,525.00, representing the proceeds derived from the creditor fraud is subject to forfeiture.

### III.   CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that pursuant to Fed. R.Crim.P. 32.2 the Court enters a preliminary order of forfeiture finding that the defendants must forfeit: (1) the sum of $11,480,629.41, representing the total value of the property involved in the money laundering; (2) the sum of $5,131,881.92, representing the net proceeds traceable to the Wallabout street property; (3) the sum of $4,510,629.41, representing the proceeds derived from the insurance fraud; and (4) the sum of $72,525.00, representing the proceeds derived from the creditor fraud. All of these amounts are subject to forfeiture.

**SO ORDERED.**