07-4533-cr
USA v. Castello

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: August 28, 2008                    Decided: January 30, 2009)

Docket No. 07-4533-cr

_____

UNITED STATES OF AMERICA,

*Appellee.*

– v. –

MICHAEL VARRONE, RAMON CALVO, ROLF ANDERSON,
DANA SCHWARTZ CASTELLO,

*Defendants,*

JOSEPH A. CASTELLO,

*Defendant-Appellant.*

_____

Before CALABRESI, SOTOMAYOR, and B.D. PARKER, *Circuit Judges*

_____

Defendant-appellant Joseph A. Castello appeals from the September 26, 2007 judgment of the United States District Court for the Eastern District of New York following his conviction, after a jury trial, of failure to file Currency Transaction Reports ("CTRs") in violation of 31 U.S.C. §§ 5313, 5322(a). Castello challenges the district court's orders of forfeiture and restitution. We vacate the order of forfeiture and remand to the district court to make factual findings regarding the four factors set forth in *United States v. Bajakajian*, 524 U.S. 321, 337–39 (1998). We also vacate the district court's order of restitution, holding that the district court lacked authority under *Hughey v. United States*, 495 U.S. 411 (1990) and *United States v. Gill*, 523 F.3d 107 (2d Cir. 2008) (per curiam) to impose as a condition of supervised release restitution to a victim of a fraud who wrote a check cashed by Castello, because the victim's losses were not directly caused by Castello's failure to file CTRs. In so doing, we join our sister circuits in concluding that restitution can be ordered as a condition of supervised release under 18 U.S.C. §§ 3583(d), 3563(b)(2) only to compensate for losses caused by the specific conduct that is the basis for the offense of conviction.

BURTON T. RYAN, JR., Assistant United States Attorney (David C. James, Diane Leonardo-Beckmann, *on the brief*), *for* Benton J. Campbell, United States Attorney for the Eastern District of New York, Brooklyn, New York, *for appellee.*

MURRAY E. SINGER, Great Neck, New York, *for defendant-appellant*.

SOTOMAYOR, *Circuit Judge*:

Defendant-appellant Joseph A. Castello appeals from the September 26, 2007 judgment of the United States District Court for the Eastern District of New York (Wexler, J.), following his conviction, after a jury trial, of failure to file Currency Transaction Reports ("CTRs") in violation of 31 U.S.C. §§ 5313, 5322(a). The district court sentenced Castello principally to 60 months' incarceration, a $250,000 fine, $300,000 in restitution, and forfeiture of $12,012,924 and any interest in real property located at 47 Alpine Road, Greenwich, Connecticut ("47 Alpine Road"). The district court discussed forfeiture in both its judgment and in a separate forfeiture order.[1] Castello challenges the forfeiture and restitution ordered by the district court. We conclude that we lack an adequate factual record to determine whether the forfeiture ordered by the district court constitutes an excessive fine, and we therefore vacate the district court's order of forfeiture in the judgment and in its separate forfeiture order and remand to the district court to make factual findings regarding the four factors set forth in *United States v. Bajakajian*, 524 U.S. 321, 337–39 (1998). We also vacate the judgment's order of restitution, holding that the district

_____

[1] We note that there is an inconsistency between the two orders. The judgment orders forfeiture of $12,012,924 and any interest in real property located at 47 Alpine Road. The forfeiture order mandates forfeiture of $9,341,051.81, any interest in real property located at 47 Alpine Road, and all funds in or transferred to or through a named Citibank account, up to and including the sum of $2,671,872.50. Because we vacate the forfeiture order and the judgment's order of forfeiture, we need not address this inconsistency.

2

court lacked authority under *Hughey v. United States*, 495 U.S. 411 (1990) and *United States v. Gill*, 523 F.3d 107 (2d Cir. 2008) (per curiam) to impose as a condition of supervised release restitution to a victim of a fraud who wrote a check cashed by Castello because the victim's losses were not directly caused by Castello's failure to file CTRs.  In a companion summary order issued today, we affirm Castello's judgment of conviction.

## BACKGROUND

Castello was convicted, following a jury trial, of failing to file CTRs for checks he cashed as part of his check-cashing business, in violation of 31 U.S.C. §§ 5313, 5322(a).[2]  Under those statutes and an accompanying regulation, a financial institution must file a CTR with the United States Secretary of Treasury whenever it is involved in a transaction for the payment of currency that exceeds $10,000.  *See* §§ 5313, 5322(a); 31 C.F.R. § 103.22.  The government submitted evidence that Castello cashed over $200 million in checks for which he should have filed CTRs.

By judgment dated September 26, 2007, the district court sentenced Castello to 60 months' imprisonment, to be followed by three years' supervised release.  The court also ordered Castello to pay a $250,000 fine, $300,000 in restitution to Mr. Leo Bruss, a $100 special assessment, and forfeiture of $12,012,924 and any interest in real property located at 47 Alpine Road.  The $250,000 fine was the maximum authorized under the applicable statute and sentencing guideline.

The parties had agreed to have the district court decide the amount of any forfeiture.  The government sought a money judgment of $9,341,051.81, which it argued represented four

---

[2] Castello was acquitted of charges of structuring financial transactions, conspiracy to launder money, conspiracy to impede and defeat the IRS, two counts of tax evasion, and two counts of obstruction of justice.

3

percent of the checks exceeding $10,000 that Castello cashed without filing CTRs. The government also sought asset forfeiture of (1) any interest in real property located at 47 Alpine Road, and (2) funds in or transferred through or to a named Citibank account, up to and including the sum of $2,671,872.50. *United States v. Castello*, No. Cr. 04-336, 2007 WL 2778686, at *1 (E.D.N.Y. Sept. 17, 2007).

The district court agreed that the forfeiture sought by the government was warranted, and signed a preliminary order of forfeiture on September 17, 2007, and a final order of forfeiture on September 25, 2007. The district court found that the money judgment sought by the government was "properly representative of the fees earned by Castello for cashing checks in excess of $10,000 for which no CTRs were filed. . . . [and therefore] represent[ed] a proper amount subject to forfeiture." *Id.* at *2. The court also found that "the assets identified [were] properly traceable to the crime," because "[t]he Citibank account was used by Castello to conduct his check cashing business," and "the Government has submitted more than sufficient evidence demonstrating that the funds in that account were used in construction of 47 Alpine Road." *Id.* The district court concluded that "the Government has proved, by the required preponderance of the evidence, that the money judgment sought and assets sought to be forfeited were involved in the offense for which Castello was convicted and traceable thereto." *Id.*

The district court also concluded that the forfeiture order did not violate the Excessive Fines Clause of the Eighth Amendment, distinguishing *United States v. Bajakajian*, 524 U.S. 321, in which the Supreme Court held that forfeiture of $357,144 in currency that a defendant failed to report when exiting the United States constituted an excessive fine. *Castello*, 2007 WL 2778686, at *3. The district court argued that while the *Bajakajian* defendant was convicted of a single failure to report, Castello's crime involved thousands of separate transactions over nearly a

4

decade. Furthermore, while *Bajakajian* involved the forfeiture of the entire amount involved in the crime, Castello's forfeiture was based only on the fee he charged for cashing the checks.[3] The district court concluded that the amount sought by the government was "fair, reasonable and well-supported by the evidence of record." *Id*.

With respect to the court's order that Castello pay restitution to Bruss, the government submitted evidence at trial that Bruss was the victim of a fraudulent scheme by a company called New Way Capital, and that Castello's business had cashed a $300,000 check that Bruss had sent to New Way Capital. Castello later spoke to Bruss, described himself as an honest man, and falsely stated that he paid all of his taxes. At sentencing, the district court judge stated that this evidence of Castello's misrepresentation to Bruss, a "poor retiree," "st[ood] out in [his] mind," and ordered Castello to pay restitution for the money Bruss had lost through the fraud.

Castello argues on appeal that the forfeiture imposed by the district court was unauthorized by statute and violates the Excessive Fines Clause. He also argues that the court lacked authority to order restitution to Bruss as part of his sentence.

## DISCUSSION

### A. Forfeiture

As an initial matter, Castello argues that the forfeiture was not authorized under 31 U.S.C. § 5317(c) because the money and assets subject to forfeiture were not "instrumentalities" of Castello's crime, citing *Bajakajian*, 524 U.S. at 333–34. We reject this argument because

---

[3] We note in passing that the forfeiture order appears to require more than the forfeiture of Castello's check-cashing fee. In addition to requiring the forfeiture of four percent of the value of the checks cashed by Castello that exceeded $10,000, the order also required the forfeiture of any interest in real property located at 47 Alpine Road, and the forfeiture of funds in or transferred through or to a named Citibank account, up to and including the sum of $2,671,872.50. Because we vacate the forfeiture order, we need not address this issue.

Castello misconstrues *Bajakajian*'s analysis. The Supreme Court never stated that only instrumentalities of an offense—property that was the actual means by which an offense was committed—could be subject to criminal forfeiture. Rather, it held that it is "*irrelevant* whether [the forfeited] currency is an instrumentality" for purposes of determining whether a criminal forfeiture constitutes an excessive fine. *Id.* at 333 (emphasis added). Furthermore, § 5317(c)(1)(A) is not limited to forfeiture of instrumentalities of an offense; rather, it mandates forfeiture of "all property, real or personal, *involved in* the offense and any property *traceable* thereto." 31 U.S.C. § 5317(c)(1)(A) (emphasis added); *see also United States v. Schlesinger*, 396 F. Supp. 2d 267, 271 (E.D.N.Y. 2005) (interpreting nearly identical language in 18 U.S.C. § 982 and stating that the "term 'involved in' has consistently been interpreted broadly by courts to include any property involved in, used to commit, or used to facilitate" the offense), *aff'd* 514 F.3d 277 (2d Cir. 2008). Castello never argues that the property the district court ordered forfeited fails to meet this broader definition.

Castello also argues, as he did before the district court, that the forfeiture order violates the Excessive Fines Clause of the Eighth Amendment. We consider this argument *de novo*, and we are bound by the district court's factual findings unless they are clearly erroneous. *Bajakajian*, 524 U.S. at 336–37 & n.10.

A criminal forfeiture is unconstitutionally excessive if "it is grossly disproportional to the gravity of a defendant's offense." *Id.* at 334. In *Bajakajian*, a defendant pleaded guilty to failing to report exported currency, and the government sought forfeiture of $357,144, the entire currency amount that the defendant failed to declare. *Id.* at 324–25. The Supreme Court held that full forfeiture in those circumstances would violate the Excessive Fines Clause. *Id.* at 324. In applying *Bajakajian*, we have noted that

6

[a]mong the factors the [*Bajakajian*] Court considered [in determining whether the forfeiture was excessive] were [1] "the essence of the crime" of the [defendant] and its relation to other criminal activity, [2] whether the [defendant] fit into the class of persons for whom the statute was principally designed, [3] the maximum sentence and fine that could have been imposed, and [4] the nature of the harm caused by the [defendant's] conduct.

*United States v. Collado*, 348 F.3d 323, 328 (2d Cir. 2003) (per curiam) (citing *Bajakajian*, 524 U.S. at 337–39). We have applied these four factors (the "*Bajakajian* factors") in evaluating whether a forfeiture is grossly disproportional. *See United States v. Elfgeeh*, 515 F.3d 100, 139 (2d Cir. 2008) (holding that a forfeiture was not excessive when the record was silent with respect to the fourth factor but the "other three reveal that the . . . forfeiture . . . is not disproportional").

In Castello's case, the district court rejected Castello's argument that the forfeiture sought by the government violated the Excessive Fines Clause of the Eighth Amendment. Although the district court distinguished *Bajakajian*, it neither evaluated the *Bajakajian* factors nor made factual findings regarding those factors. *See Castello*, 2007 WL 2778686, at \*3. We conclude that under the circumstances of Castello's case—where the value of the forfeiture far exceeds the $250,000 fine authorized by statute and the Sentencing Guidelines—the district court's failure to adequately consider the *Bajakajian* factors leaves us unable to conduct the required proportionality analysis in order to determine whether the forfeiture amount constitutes an excessive fine.

The value of the forfeiture imposed by the district court in Castello's case is more than forty times the maximum fine permitted under either the CTR statute or the Sentencing Guidelines. 31 U.S.C. § 5322(a); U.S.S.G. § 5E1.2(c). Under these circumstances, we cannot presume that the amount of forfeiture is permissible under the Eighth Amendment. *See United*

7

*States v. 817 N.E. 29th Drive, Wilton Manors, Fla.*, 175 F.3d 1304, 1309 (11th Cir. 1999) ("[I]f the value of forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional."); *United States v. Sherman*, 262 F.3d 784, 795 (8th Cir. 2001) ("'[I]f the value of the property forfeited is within or near the permissible range of fines using the sentencing guidelines, the forfeiture almost certainly is not excessive.'" (quoting *817 N.E. 29th Drive*, 175 F.3d at 1310)); *see also Bajakajian*, 524 U.S. at 336 (stating that one "particularly relevant" consideration in deriving a standard for constitutional excessiveness is "that judgments about the appropriate punishment for an offense belong in the first instance to the legislature"); *United States v. Bernitt*, 392 F.3d 873, 880–81 (7th Cir. 2004) (holding that "[g]iven the potential [congressionally mandated] punishment the district court could have imposed on" the defendant, a forfeiture was not excessive). Rather, because the value of the property ordered forfeited far exceeds the statutory and Guideline maximum fines, both the district court and this Court must carefully consider the four *Bajakajian* factors together to determine whether the forfeiture amount is constitutionally excessive.

We begin with the third *Bajakajian* factor—the maximum sentence and fine that could have been imposed on Castello—because it is established by the record. This factor weighs against the constitutionality of the forfeiture because the forfeiture amount is forty times the statutory fine range set by Congress. *See 817 N.E. 29th Drive*, 175 F.3d at 1309 n.9 (noting in dicta that a "forfeiture far in excess of the statutory fine range . . . is likely to violate the Excessive Fines Clause").

The remaining three factors are not clearly established on the record. The district court justified the amount of forfeiture based solely on the number and size of transactions in which Castello failed to file CTRs and because the forfeiture was limited only to the fee Castello

charged for cashing the checks, rather than the entire cash amount. *See Castello*, 2007 WL 2778686, at *3. The latter justification is not directly relevant to any of the four *Bajakajian* factors, and may not, standing alone, justify the forfeiture amount. The first justification, the number of transactions, might be relevant to factors two and four of the *Bajakajian* analysis: whether Castello fits into the class of persons for whom the CTR statute was principally designed and the nature of the harm caused by Castello's conduct. It might also inform the district court's analysis of the first factor, the essence of the crime and its relation to other criminal activities, but it does not address certain relevant considerations under the first factor, including Castello's alleged role in related activities such as money laundering and fraud. Further, because the district court did not analyze the *Bajakajian* factors, we cannot know if it would have made other factual findings that would weigh for or against the constitutionality of the forfeiture amount.

We therefore conclude that we lack factual development by the district court regarding three of the *Bajakajian* factors: the essence of Castello's crime and its relation to other criminal activity, whether Castello fits into the class of persons for whom the CTR statute was principally designed, and the nature of the harm caused by Castello's conduct. *See Collado*, 348 F.3d at 328. Because we lack information about the extent to which the *Bajakajian* factors support the constitutionality of the forfeiture order, the record before us is insufficient to evaluate Castello's Eighth Amendment claim.[4]

---

[4] We emphasize that a forfeiture that exceeds the statutory maximum fine is not necessarily constitutionally excessive, and that the ultimate question before the court is how "the amount of the forfeiture [compares] to the gravity of the defendant's offense." *Bajakajian,* 524 U.S. at 336–37; *see also United States v. Wallace*, 389 F.3d 483, 486–87 (5th Cir. 2004) (finding that a forfeiture of a $30,000 airplane was not grossly disproportionate to the $15,000 statutory maximum under a predecessor statute because the airplane's value "differs from this maximum by only a factor of two," and the other *Bajakajian* factors supported forfeiture).

We therefore vacate the district court's order of forfeiture in the judgment and in its separate forfeiture order, and remand to the district court to determine whether the forfeiture amount is constitutionally excessive, considering the *Bajakajian* factors.

**B. Restitution**

Castello also challenges the district court's order that he provide $300,000 in restitution to Bruss as a condition of supervised release.[5]  We conclude that the district court erred in ordering restitution to a victim who was not directly injured by Castello's failure to file CTRs.

"It is well-established that a federal court may not order restitution except when authorized by statute." *United States v. Bok*, 156 F.3d 157, 166 (2d Cir. 1998).  The district court ordered restitution pursuant to the statute authorizing the imposition of supervised release, 18 U.S.C. §§ 3583, which, in pertinent part, permits a district court to order a defendant to "make restitution to a victim of the offense" as a condition of supervised release.  18 U.S.C. §§ 3583(d), 3563(b)(2).[6]  In *United States v. Hughey*, the Supreme Court held that very similar language in the Victim and Witness Protection Act ("VWPA") authorized restitution "only for the loss caused by the specific conduct that is the basis of the offense of conviction."  495 U.S. 411, 413 (1990).  The Court reasoned that the language of the VWPA, which provides that a "'defendant convicted of an offense'" may be ordered to "'make restitution to any victim of such offense,'" "suggests strongly that restitution as authorized by the statute is intended to compensate victims

---

[5] Castello erroneously asserts that the district court imposed restitution pursuant to the Victim and Witness Protection Act, 18 U.S.C. §§ 3663, 3664.  The district court imposed restitution as a condition of supervised release, pursuant to 18 U.S.C. §§ 3583(d), 3563(b)(2).

[6] Under § 3583(d), the district court may, under certain conditions, impose as a condition of supervised release "any condition set forth as a discretionary condition of probation in section 3563(b)."  Section 3563(b)(2) permits the court to require, as a discretionary condition of probation, that the defendant "make restitution to a victim of the offense."

10

only for losses caused by the conduct underlying the offense of conviction." *Id.* at 415–16 (quoting 18 U.S.C. § 3579(a)(1)). The Court further noted that a previous version of the VWPA used the phrase "victim of the offense"—the same language that appears in the supervised release statute—and stated that its "construction of the statute does not turn on the minor change in the language" of the VWPA. *Id.* at 413 n.1. We have never decided whether *Hughey*'s ruling, that restitution can be ordered under the VWPA only for losses caused by the specific conduct that is the basis for the offense of conviction, also applies to the restitution provision of the supervised release statute. The government concedes that *Hughey* applies, however, and we agree.

The supervised release statute's authorization of restitution to "a victim of the offense" is very similar to the VWPA's authorization of restitution to "any victim of such offense," and is identical to the language used in the previous version of the VWPA, which the Supreme Court noted in dicta would have been subject to the same construction. *See id.* As the government concedes, every other circuit that has considered this question has applied *Hughey* to awards of restitution as a condition of supervised release under 18 U.S.C. §§ 3583(d), 3563(b)(2). *See United States v. Frith*, 461 F.3d 914, 920 (7th Cir. 2006); *United States v. Romines*, 204 F.3d 1067, 1069 (11th Cir. 2000); *Gall v. United States*, 21 F.3d 107, 110 (6th Cir. 1994); *United States v. Rosser*, No. 91-5856, 1992 WL 113384, at *1 (4th Cir. May 29, 1992) (unpublished opinion) (noting that government conceded issue); *see also United States v. Cottman*, 142 F.3d 160, 170 (3d Cir. 1998) (holding that the VWPA and the supervised release statute are parallel in their definition of "victim"). We now join our sister circuits in concluding that *Hughey*'s construction of the VWPA is applicable to the restitution provision of the supervised release statute. We hold that restitution can be ordered as a condition of supervised release under 18 U.S.C. §§ 3583(d), 3563(b)(2) only to compensate for losses caused by the specific conduct that

11

is the basis for the offense of conviction.[7]  In Castello's case, as the government concedes,

Bruss's loss was directly caused by a fraudulent scheme, and not by Castello's failure to file

CTRs.[8]  Accordingly, Castello's offense conduct lacks the causal nexus to Bruss's loss required

under *Hughey*, and the restitution order is not authorized.

Our previous opinion in *United States v. Gill*, 523 F.3d 107 (2d Cir. 2008) (per curiam),

is not to the contrary.  In *Gill*, we held that a district court had authority to impose a condition of

supervised release requiring a defendant to continue to pay restitution in connection with a

restitution order from a *prior* case.  *Id.* at 109–10.  This condition was imposed pursuant to the

"catch-all" provision of the supervised release statute, which permits a court to impose "any

other condition it considers to be appropriate."  18 U.S.C. § 3583(d); *see also United States v.*

*Dupes*, 513 F.3d 338, 344 (2d Cir. 2008) (upholding conditions of supervised release imposed

pursuant to a securities fraud conviction that related to a prior sex offense conviction).  The

reaffirmation of an existing judicial order of restitution is not governed by the specific restitution

provisions of § 3583(d) and § 3563(b)(2), and therefore the order appropriately fell under the

catch-all provision.  *See United States v. Love*, 431 F.3d 477, 483 (5th Cir. 2005) ("[T]he

---

[7] We note that although the supervised release statute states that a court may order restitution "not subject to the limitation of," *inter alia*, section 3663(a) of the VWPA, 18 U.S.C. § 3563(b)(2), we have interpreted this provision as permitting restitution for *offenses* that are not among those for which the VWPA authorizes restitution. *See Bok*, 156 F.3d at 166-67; *see also United States v. Comer*, 93 F.3d 1271, 1278 n.6 (6th Cir. 1996) ("The limitation of section 3663(a) is that the VWPA only applies to offenses violating Title 18 or certain subsections of the Federal Aviation Act of 1958.").  This provision does not alter our analysis of whether a court may order restitution for losses not caused by the offense conduct.

[8] The VWPA provides for restitution to "victim[s]," who are defined as persons "directly and proximately harmed" as a result of the offense.  18 U.S.C. § 3663(a)(2).  Because the VWPA uses language nearly identical to the supervised release statute, we apply this definition to restitution imposed under the supervised release statute as well. *See Cottman*, 142 F.3d at 170.

catch-all provision does allow a court to order compliance with a previously existing order, a practice of which Congress has specifically indicated approval."). In contrast, restitution to Bruss is squarely addressed by the restitution provision of §§ 3583(d), 3563(b)(2). Accordingly, unlike in *Gill*, the district court in Castello's case may not rely on the catch-all provision to support its restitution order. *See Cottman*, 142 F.3d at 170 (holding that a court cannot impose restitution that is not permitted by the specific restitution provision by using catch-all provision, because doing so would allow "the 'catch-all' exception prong of § 3583(d) [to] swallow the rule").

We therefore conclude that the district court erred in ordering $300,000 in restitution to Bruss and vacate the judgment's order of restitution.

## CONCLUSION

For the foregoing reasons, we VACATE the district court's order of forfeiture in the judgment and in its separate forfeiture order, as well as the district court's order of restitution in the judgment, and REMAND for further action consistent with this opinion. In a companion summary order, we AFFIRM the district court's judgment of conviction.