09-2784-cr
United States v. Castello

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2009

(Argued: May 11, 2010     Decided: July 7, 2010)

Docket No. 09-2784-cr

- - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

                    Appellant,

          - v.-

JOSEPH A. CASTELLO,

                    Defendant-Appellee,

MICHAEL VARRONE, RAMON CALVO, ROLF ANDERSEN,
DANA SCHWARTZ CASTELLO,

                    Defendants.

- - - - - - - - - - - - - - - - - - - -x

     Before:        JACOBS, Chief Judge, WINTER and
                    McLAUGHLIN, Circuit Judges.

     Defendant-Appellee Joseph Castello was convicted in the

United States District Court for the Eastern District of New

York (Wexler, J.), after a jury trial, of failing to file

thousands of Currency Transaction Reports in the course of

running his check-cashing business, in violation of 31

U.S.C. § 5313(a). Forfeiture was mandatory, and the district court fixed the amount at $12,012,924.31, plus his equity in certain real property. On appeal, this Court affirmed the conviction but vacated the forfeiture order and remanded to the district court for further fact-finding as to whether the forfeiture was unconstitutionally excessive under United States v. Bajakajian, 524 U.S. 321 (1998).

On remand, the district court vacated the forfeiture order in the judgment and fixed the amount of forfeiture at zero. On this appeal, the United States does not contest (or concede) the unconstitutionality of the original amount, but argues that *some* amount of forfeiture is mandated.

We now vacate the revised order and remand for the district court to reinstate the initial forfeiture order.

DIANE LEONARDO BECKMANN (David C. James, Laura D. Mantell, on the brief), Assistant United States Attorney's Office for the Eastern District of New York, *for* Benton J. Campbell, United States Attorney for the Eastern District of New York, Brooklyn, New York, for Appellant.

MURRAY E. SINGER, Law Office of Murray E. Singer, Great Neck, New York, for Appellee.

DENNIS JACOBS, Chief Judge:

Defendant-Appellee Joseph Castello was convicted in the United States District Court for the Eastern District of New York (Wexler, J.), after a jury trial, of failing to file thousands of Currency Transaction Reports ("CTRs") in the course of running his check-cashing business, in violation of 31 U.S.C. § 5313(a). Forfeiture was mandatory, and the district court fixed the amount at $12,012,924.31, plus his equity in his house (the "First Order"). On appeal, this Court affirmed the conviction but vacated the First Order and remanded to the district court for further fact-finding as to whether the forfeiture was unconstitutionally excessive.

On remand, the district court's "Second Order" fixed the forfeiture amount at zero. This appeal by the United States does not contest (or concede) the unconstitutionality of the original amount; instead, the government argues that *some* amount of forfeiture is mandated.

We now vacate the Second Order and remand for the district court to reinstate the First Order.

**I**

Castello's check-cashing business cashed more than $600 million in checks over the period of the indictment: January 1, 1995 to November 30, 2004. In violation of 31 U.S.C. § 5313(a) and 31 C.F.R. § 103.22(b), Castello failed to file CTRs for thousands of these checks exceeding $10,000. Checks in amounts exceeding $10,000 constituted about $200 million of the total.

On March 9, 2006, a federal grand jury returned a superseding indictment charging Castello with conspiracy to launder money (18 U.S.C. § 1956(h)); failure to file CTRs (31 U.S.C. § 5313(a)); unlawfully structuring financial transactions (31 U.S.C. § 5324); conspiracy to impair, impede, obstruct, and defeat the Internal Revenue Service (18 U.S.C. § 371); tax evasion (26 U.S.C. § 7201); and obstruction of justice (18 U.S.C. § 1512). Following a jury trial, Castello was acquitted of all charges except failure to file CTRs.

Forfeiture is mandatory for failure to file CTRs. 31 U.S.C. § 5317(c)(1)(A). The government sought forfeiture of: $9,341,051.81 (which represented four percent of the value of the checks exceeding $10,000 for which no CTRs were

4

filed)[1]; $2,671,872.50 (representing funds connected with a Citibank account held in Castello's wife's name); and Castello's equity in the family home in Greenwich, Connecticut. Castello opposed the government's proposed forfeiture on the grounds that the funds sought were not involved in the offense and therefore were not subject to forfeiture, and that in any event the amount of forfeiture was grossly disproportional to the crime in violation of the Excessive Fines Clause of the Eighth Amendment, as that clause had been interpreted in United States v. Bajakajian, 524 U.S. 321 (1998).

By Memorandum and Order of September 17, 2007, the district court concluded that the government's proposal "represents a proper amount subject to forfeiture" because it was "properly representative of the fees earned by Castello for cashing checks in excess of $10,000 for which no CTRs were filed," and because the specific "assets identified are properly traceable to the crime." United States v. Castello, No. 04-336, 2007 WL 2778686, at *2 (E.D.N.Y. Sept. 17, 2007). Separately, the court considered

---

[1] Castello regularly charged a commission of between .75% and 5%.

5

the constitutionality of the forfeiture under <u>Bajakajian</u> and held that it was "fair, reasonable, and well-supported by the evidence of record. Accordingly, the forfeiture sought does not violate the Eighth Amendment." <u>Id.</u> at *3.

The First Order, entered September 25, 2007, imposed forfeiture as sought by the government: $12,012,924.31, plus the equity in the house. Castello was also sentenced to the statutory maximum of five years' imprisonment, three years' supervised release, a $250,000 fine, and a $100 special assessment.

Castello appealed his conviction and his sentence. The conviction was affirmed by summary order. <u>See</u> <u>United States v. Castello</u>, 308 F. App'x 523 (2d Cir. 2009) (summary order). The forfeiture order was vacated in a separate opinion. <u>See</u> <u>United States v. Varrone</u>, 554 F.3d 327 (2d Cir. 2009).[2] <u>Varrone</u> rejected Castello's argument that the forfeiture violated § 5317(c)(1)(A), <u>Varrone</u>, 554 F.3d at 330-31; it is therefore law of the case that the entire amount deemed forfeitable in the First Order is properly forfeitable under the statute. At the same time, <u>Varrone</u>

---

[2] <u>Varrone</u> also vacated the judgment's order of restitution, 554 F.3d at 335, but that issue is not before us on this appeal.

vacated the First Order and remanded, holding that the findings were insufficient to test constitutionality:

> [W]e lack an adequate factual record to determine whether the forfeiture ordered by the district court constitutes an excessive fine, and we therefore vacate the district court's order of forfeiture in the judgment and in its separate forfeiture order and remand to the district court to make factual findings regarding the four factors set forth in United States v. Bajakajian.

Varrone, 554 F.3d at 328-29.

On remand, the district court conducted a Bajakajian analysis, held that the First Order "cannot be upheld," United States v. Castello, No. 04-336, 2009 WL 1505271, at *2 (E.D.N.Y. May 21, 2009), and issued the Second Order, which imposed no forfeiture at all.

The United States now appeals the Second Order. The government does not concede (or contest) that the original forfeiture amount was unconstitutionally excessive. Instead, it argues that forfeiture in some (unspecified) amount is mandatory.

**II**

We review the district court's legal conclusions de novo and its factual findings for clear error. Bajakajian, 524 U.S. at 337 n.10; United States v. Capoccia, 503 F.3d

7

103, 109 (2d Cir. 2007).

"The court in imposing sentence for any violation of section 5313"--the statute Castello violated--"*shall* order the defendant to forfeit *all* property, real or personal, involved in the offense and *any* property traceable thereto." 31 U.S.C. § 5317(c)(1)(A) (emphases added).  In fixing the amount of forfeiture, the statute thus affords no leeway: *All* property involved in the failure to file CTRs is forfeited as well as *all* property traceable to that offense. See Varrone, 554 F.3d at 330-31; United States v. Elfgeeh, 515 F.3d 100, 138-39 (2d Cir. 2008).

At the same time, this broad forfeiture provision is limited by the Excessive Fines Clause of the Eighth Amendment.  See Bajakajian, 524 U.S. at 327-28.  "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish."  Id. at 334. The rule is that "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense."  Id.  The burden rests on the defendant to show the unconstitutionality of

8

the forfeiture.  United States v. Jose, 499 F.3d 105, 108 (1st Cir. 2007); United States v. Ahmad, 213 F.3d 805, 816 (4th Cir. 2000).

Putting § 5317(c)(1)(A) and Bajakajian together: The proper amount of forfeiture following a § 5313(a) conviction is the total forfeitable amount required by the statute, discounted by whatever amount is necessary to render the total amount not "grossly disproportional" to the offense of conviction.  Four factors, distilled from Bajakajian, guide our analysis:

> [1] the essence of the crime of the defendant and its relation to other criminal activity, [2] whether the defendant fit[s] into the class of persons for whom the statute was principally designed, [3] the maximum sentence and fine that could have been imposed, and [4] the nature of the harm caused by the defendant's conduct.

Varrone, 554 F.3d at 331 (applying Bajakajian) (internal quotation marks and brackets omitted).  To see how these factors work, it is useful to consider the Supreme Court's approach in Bajakajian.

Customs inspectors, using dogs trained to smell currency, stopped Bajakajian as he awaited a plane to Italy and advised him that under federal law anyone transporting more than $10,000 in currency outside the United States must

9

file a report with the federal government. Bajakajian, 524 U.S. at 324. Bajakajian claimed that he had only $8000 and his wife, $7000; but their bags contained over $350,000 in cash. Id. at 324-25. Bajakajian was convicted of willfully failing to report, in violation of 31 U.S.C. § 5316, 5322(a). Bajakajian, 524 U.S. at 325. Acting pursuant to a forfeiture statute nearly identical to § 5317(c)(1)(A),[3] the district court determined that forfeiture of the whole $350,000, as mandated by statute, would be "grossly disproportionate to the offense in question," and accordingly limited the forfeiture to $15,000. Bajakajian, 524 U.S. at 326 (internal quotation marks omitted).

The Supreme Court affirmed, id. at 344, and its analysis tracked the four factors listed above. First, "the essence of [the defendant's] crime" was a reporting violation wholly "unrelated to any other illegal activities. The money was the proceeds of legal activity and was to be used to repay a lawful debt." Id. at 337-38. Second, the defendant "d[id] not fit into the class of persons for whom

_____

[3] The forfeiture statute at issue in Bajakajian was 18 U.S.C. § 982(a)(1), which provides for forfeiture of "any property, real or personal, involved in such offense, or any property traceable to such property."

10

the statute was principally designed: He [wa]s not a money launderer, a drug trafficker, or a tax evader." Id. at 338. Third, "under the Sentencing Guidelines, the maximum sentence that could have been imposed . . . was six months, while the maximum fine was $5,000. Such penalties confirm a minimal level of culpability." Id. at 338-39 (citations omitted). And fourth, "[t]he harm that [the defendant] caused was also minimal" and only the government was affected (and "in a relatively minor way"): There was no fraud on the government, and the public fisc suffered no loss. Id. at 339. For these reasons, the Court held that full forfeiture was unconstitutionally excessive.[4]

---

[4] The only issue before the Court in Bajakajian was whether full forfeiture violated the Excessive Fines Clause. Bajakajian, 524 U.S. at 339 n.11. The Court's affirmance of the $15,000 forfeiture "reflect[ed] no judgment that a forfeiture of even $15,001 would have suffered from a gross disproportion, nor d[id] it affir[m] the reduced $15,000 forfeiture on de novo review. . . . Nor, indeed, d[id it] address in *any* respect the validity of the forfeiture ordered by the District Court. . . . [The defendant] did not cross-appeal the $15,000 forfeiture ordered by the District Court. The Court of Appeals thus declined to address the $15,000 forfeiture, and that question [wa]s not properly presented [to the Supreme Court] either." Id. A natural reading of Bajakajian suggests that a forfeiture of some amount greater than zero but less than the full amount required by statute is permissible, but the above-quoted language at least provides a caution before assuming what would otherwise seem obviously to be true. Cf. United States v. U.S. Currency in the Amount of $119,984.00, More

**III**

Applying <u>Bajakajian</u> here, it is clear that the Second Order, imposing no forfeiture, must be vacated. The full measure of forfeiture calculated in the First Order could be limited, if at all, only by the Excessive Fines Clause. Thus a forfeiture of zero would be proper only if a forfeiture of even $1 would be grossly disproportional to the offense of conviction, which is clearly not the case here. As the ensuing sections explain, application of the four <u>Bajakajian</u> factors establishes that the forfeiture imposed in the First Order was not grossly disproportional to the crime for which Castello was convicted. Accordingly, we vacate the Second Order and remand for the district court to reinstate the First Order.

**A**

The first <u>Bajakajian</u> factor requires consideration of "the essence of the crime of the defendant and its relation to other criminal activity." <u>Varrone</u>, 554 F.3d at 331 (internal quotation marks and brackets omitted). Castello

---

<u>or Less</u>, 304 F.3d 165, 175 n.7 (2d Cir. 2002) (stating, in dicta, that "<u>Bajakajian</u> does not appear to bar forfeiture of some amount less than the entire sum").

12

knowingly and willfully failed to file the CTRs, Castello, 308 F. App'x at 524 ("Castello argues that the evidence produced at trial was insufficient to prove the requisite mental state, i.e., that he *knowingly* and *willfully* failed to file CTRs for checks made out in amounts over $10,000. We disagree."), but--like Bajakajian--he was convicted of no other crime. The Supreme Court determined that these facts weigh against the constitutionality of full forfeiture.

In other ways, however, Castello's crime is far more serious than Bajakajian's. Castello failed to file the required CTRs "thousands" of times, and his doing so enabled his customers to commit various acts of fraud, whereas Bajakajian committed a single offense, once, for a purpose that was not nefarious. See Bajakajian, 524 U.S. at 326 (noting the district court's finding of fact that the defendant failed to report "because of fear stemming from cultural differences: [Defendant], who had grown up as a member of the Armenian minority in Syria, had a distrust for the Government" (internal quotation marks omitted)).

This first factor therefore weighs in favor of full

13

forfeiture.[5]

**B**

The second Bajakajian factor considers "whether the defendant fit[s] into the class of persons for whom the statute was principally designed." Varrone, 554 F.3d at 327 (brackets omitted). The CTR statute is a reporting statute intended to facilitate the government's efforts to uncover and prosecute crime and fraud. "By forcing financial institutions to [file CTRs], Congress hoped to maximize the information available to federal regulatory and criminal investigators. The overall goal of the statute was to

---

[5] This first factor also considers how the offense of conviction may bear upon other criminal activity engaged in by the defendant. Accord United States v. Cheeseman, 600 F.3d 270, 284 (3d Cir. 2010); United States v. Browne, 505 F.3d 1229, 1282 (11th Cir. 2007). This inquiry seems sufficiently broad to include within it acquitted conduct. See Bajakajian, 524 U.S. at 338 (referring to "any other illegal activities"); Varrone, 554 F.3d at 331 (referring to "other criminal activity"). Cf. United States v. Vaughn, 430 F.3d 518, 527 (2d Cir. 2005) (explaining that a sentencing court has the authority, with some limits not relevant here, to "find facts relevant to sentencing by a preponderance of the evidence, even where the jury acquitted the defendant of that conduct").

Our analysis does not consider these issues, however, because the First Order was constitutional regardless of whether the government proved other criminal activity by a preponderance of the evidence.

interdict the laundering of illegally obtained and untaxed monies in legitimate financial institutions." United States v. St. Michael's Credit Union, 880 F.2d 579, 582 (1st Cir. 1989); see also Cal. Bankers Ass'n v. Shultz, 416 U.S. 21, 27 (1974) ("The absence of such records . . . was thought to seriously impair the ability of the Federal Government to enforce the myriad criminal, tax, and regulatory provisions of laws which Congress had enacted."). Moreover, the CTR statute expressly applies to a "cashier of . . . checks," 31 U.S.C. § 5312(a)(2)(K), so Castello falls squarely within the class of persons whose conduct the statute is intended to regulate.

The district court recognized that "Castello [clearly] fits within the class of persons for whom this reporting statute was designed," but afforded this factor only "neutral" weight because Castello was not convicted of the offenses that the statute aims to expose.[6] Castello, 2009

---

[6] The district court observed: "To the extent that the statute seeks to punish third parties involved in different criminal activities, outside the scope [of] the original check cashing, the court holds that there is insufficient evidence to hold that this factor weighs in favor of Constitutionality. While the government charged Castello with the crimes of money laundering, tax evasion, and obstruction of justice, the jury did not convict Castello of these crimes." Castello, 2009 WL 1505271 at *2.

15

WL 1505271 at *2. We disagree. The inquiry in this case is whether Castello was the kind of person to whom the statute is directed--as he clearly is.

Castello draws an analogy to Bajakajian, which concluded that the defendant did "not fit into the class of persons for whom the statute [31 U.S.C. § 5316] was principally designed: He is not a money launderer, a drug trafficker, or a tax evader." Bajakajian, 524 U.S. at 338. True, Castello is not a money launderer, a drug trafficker, or a tax evader; but his acts facilitated such conduct in just the way the statute was designed to frustrate, while Bajakajian, who was carrying his own earned money to use for lawful purposes, was none of those things, and did not facilitate such offenses.

Factor number two therefore weighs in favor of full forfeiture.

**C**

Third, Bajakajian considers "the maximum sentence and fine that could have been imposed." Varrone, 554 F.3d at 331. Statutory penalties reflect severity in a general way, but the applicable Guidelines are more indicative. In

16

Bajakajian, the maximum statutory sentence was five years' imprisonment and a $250,000 fine, which (as the Supreme Court observed) "suggests that [Congress] did not view the reporting offense as a trivial one." 524 U.S. at 339 n.14. But since the Guideline penalty applicable to Bajakajian was only six months' imprisonment and a $5000 fine, id. at 338, the level of culpability was found to be "minimal," id. at 339. Because "the maximum [Guideline] fine and Guideline sentence to which [the defendant] was subject were but a fraction of the penalties authorized [by statute]," the disparity "undercuts any argument based solely on the statute, because [the Guideline sentence] show[s] that [the defendant's] culpability relative to other potential violators of the reporting provision--tax evaders, drug kingpins, or money launderers, for example--is small indeed." Id. at 339 n.14.

Here, the statutory maximum penalties are five years' imprisonment and a $250,000 fine, 31 U.S.C. § 5322(a); and that is the sentence that Castello received. As Varrone observed, the statutory maximum fine was a small fraction of the $12 million, so that the First Order raised a constitutional issue. 554 F.3d at 332. But the relevant

17

metric is the top of the Guidelines for the fine and for imprisonment; in this case, while the maximum Guidelines fine may not exceed the statutory maximum, the Guidelines range of imprisonment was far greater.[7]  See Tr. of Sentencing Proceedings at 13 (September 25, 2007) (Castello's lawyer explaining that the "guideline range from the presentence report is obviously way beyond the five-year maximum that the Court can impose for this conviction and it is way beyond that five-year maximum because of the amount of money involved."); see also id. (noting that the five-year statutory maximum was "well below the guidelines range").

For these reasons, the third factor weighs in favor of full forfeiture.

---

[7] Varrone considered only the statutory fine in arriving at its conclusion that this factor weighs against the constitutionality of full forfeiture.  This observation was premised both on the Eleventh Circuit's decision in United States v. 817 Northeast 29th Drive, Wilton Manors, Florida, 175 F.3d 1304, 1309 n.9 (11th Cir. 1999), and on an ambiguity in Bajakajian itself, which refers to the "maximum fine" without clearly differentiating the statutory maximum from the Guidelines maximum.  We consider this wrinkle for the first time in this opinion.

**D**

Finally, Bajakajian invites an analysis of "the nature of the harm caused by [Castello's] conduct." Varrone, 554 F.3d at 331. As the district court said, the CTR statute "exists so that the government can track the flow of cash transactions [and] these large amounts of cash are not funneled into criminal activities. . . ." Castello, 2009 WL 1505271 at *3. The court added, however, that "[t]he fact that Castello was not convicted of involvement in [any other] crimes makes this factor weigh against a finding that the forfeiture was Constitutionally proportionate to the crime of which Castello was convicted." Id. We disagree.

Bajakajian was convicted of a *single* failure to report, which "affected only one party, the Government, and in a relatively minor way. There was no fraud on the United States, and [the defendant] caused no loss to the public fisc." Bajakajian, 524 U.S. at 339. The same cannot be said here.

Castello cashed thousands of checks in excess of $10,000, totaling over $200 million, without filing the required CTRs, and he did so knowingly and willfully. Castello, 308 F. App'x at 523. Castello's refusal to file

19

CTRs helped his customers evade taxes, cash fictitious checks, and commit securities fraud. The victims included private parties as well as the federal government. Cf. Ahmad, 213 F.3d at 816-17 (noting that the defendant committed multiple reporting violations that harmed both the federal government and private parties). As Castello emphasizes, he was acquitted of tax fraud and the related crimes with which he was charged; but his failure to file the CTRs allowed others to commit crimes that, had he filed the CTRs, the government could have prevented or prosecuted.

Accordingly, this final factor weighs in favor of full forfeiture.

**CONCLUSION**

The Second Order, imposing no forfeiture, is vacated. We remand for the district court to reinstate the First Order requiring forfeiture of $12,012,924.31 and the defendant's equity interest in his home in Greenwich, Connecticut.